# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| LEONG SING LYE a/k/a JOHN LYE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>HARBIN ELECTRIC INC.<br><br>　　　　　Defendant.<br>_____<br>HARBIN ELECTRIC INC.,<br><br>　　　　　Counterclaimant,<br><br>　vs.<br><br>LEONG SING LYE a/k/a JOHN LYE,<br><br>　　　　　Counterdefendant. | Case No.: 2:06-cv-00796-RLH-PAL<br><br>**O R D E R**<br><br>(Motion to Dismiss - #17) |

　　　　Before the Court is Plaintiff/Counterdefendant John Lye's ("Lye") **Motion to Dismiss Defendant's Counterclaim for Breach of Fiduciary Duty** (#17), filed August 15, 2006. The Court has also considered Defendant/Counterclaimant Harbin Electric Inc.'s ("Harbin") Opposition (#34), filed September 19, 2006, and Plaintiff/Counterdefendant's Reply (#39), filed October 10, 2006.

# BACKGROUND

On June 30, 2006, Lye filed his Complaint against Harbin alleging claims for breach of contract, quantum meruit, promissory estoppel, and unjust enrichment, and seeking the recovery of costs, expenses, and attorneys' fees.  Harbin is a company that designs, develops and manufactures products.  On July 24, 2006, Harbin filed its Answer and Counterclaim alleging claims for rescission, fraud and deceit, breach of contract, and breach of fiduciary duty, and seeking recovery of costs and attorneys' fees.  In the instant motion, Lye moves to dismiss the Counterclaim for breach of fiduciary duty.

Harbin states in its Answer and Counterclaim that in early 2005, two investment firms, First Wilshire Securities Management, Inc. ("First Wilshire") and Asia Ventures Management ("AVM"), discussed the possibility of institutional investment in Harbin.  According to Harbin, when communications between First Wilshire and AVM were taking place, Lye was a salaried employee of AVM who was asked on behalf of the two companies to obtain information regarding the contemplated investment in Harbin.  Harbin states that Lye visited Harbin twice while he was an AVM employee: March 17, 2005, and April 6, 2005.

Harbin asserts that during those visits, Lye presented himself as an independent specialist and consultant in raising investment capital, promoting companies, and developing relationships.  Further, Harbin alleges that Lye claimed to have close personal relationships and contacts with representatives of hedge funds, and experience in fund-raising that would enable Harbin to raise significant investment capital.  According to Harbin, at no time during these visits did Lye disclose that he was merely an employee of an investment firm sent to Harbin to carry out a fact-gathering assignment.

According to Harbin, during March and April 2005, First Wilshire and AVM conducted preliminary due diligence in connection with their possible investment in Harbin. Harbin asserts that on its belief that Lye was performing useful services in raising working capital

from First Wilshire and AVM, Harbin hired Lye as its Consultant of Corporate Strategy in June 2005.  Harbin asserts that around that same time, AVM terminated Lye because AVM discovered his inappropriate activities.  However, Lye allegedly did not disclose this fact to Harbin, but instead said that he had "decided to leave his partnership at AVM . . . to pursue other opportunities and new challenges."  (Def.'s Countercl. ¶ 9.)

In June 2005, Lye and Harbin entered into an Appointment Agreement ("Agreement"), appointing Lye as "Consultant of Corporate Strategy."   Under the Agreement, Lye was to assist Harbin to develop and carry out an effective corporate strategy, including assisting with a private placement of Harbin's shares of common stock and other securities.  In exchange, Harbin agreed to compensate Lye with 1) an initial payment of $50,000, 2) 100,000 shares of Harbin's common stock, and 3) 8% of the total number of Harbin's common stock sold through Harbin's first private placement.

By August 31, 2005, Harbin had entered into Securities Purchase Agreements with First Wilshire to sell 1,600,000 shares of Harbin's common stock to investors, with First Wilshire as the primary investor in this private placement. According to Harbin, Lye did not arrange any of the investors in this private placement financing arrangement.  Harbin further claims that for the rest of 2005, Lye ignored and disregarded the duties set forth in the Agreement and resurfaced only after the completion of the private placement to claim that he was entitled to significant shares of Harbin's stock.

Based on these facts, Lye moves to dismiss Harbin's Counterclaim for Breach of Fiduciary Duty on the ground that Harbin has not pleaded sufficient facts to establish agency or fiduciary relationship.  Alternatively, Lye asserts that any fiduciary relationship arose solely from the Agreement and therefore that the fraud exception to the economic loss doctrine does not apply, thereby barring Harbin's claim. Here, the Court finds that the fiduciary relationship arose prior to

the signing of the Agreement, and that the fraud exception to the economic loss doctrine applies, to allow Harbin's claim for breach of fiduciary duty.

## DISCUSSION

**I. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

**II. Application**

The Parties' dispute centers on the application of the economic loss doctrine to bar Harbin's counterclaim for breach of fiduciary duty. "The economic loss doctrine marks the fundamental boundary between contract law . . . and tort law." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (overruled on other grounds). It "serves to distinguish between tort, or duty-based recovery, and contract, or promise-based recovery." *Id.* at 1264. Under the economic loss doctrine, "there can be no recovery in tort for purely economic losses." *Id.* at 1263.

Here, Harbin argues that the fiduciary relationship between it and Lye arose not from the contract but from their course of dealings and other circumstances that occurred prior to the signing of the Agreement. The principal/agent relationship ("agency") gives rise to a fiduciary relationship. *LeMon v. Landers*, 402 P.2d 648, 649 (Nev. 1965). Agency is a fact intensive

inquiry, and may be shown by circumstances and course of dealing. *Keystone Realty v. Osterhus*, 807 P.2d 1385, 1387-88 (Nev. 1991). Evidence of course of dealing to support a conclusion that a defendant's actions implied agreement to act as plaintiffs' agent can include interrelated transactions of the parties and representations and advice given by the defendant. *Id.*

Here, the Court finds that Harbin has alleged sufficient facts to establish that the parties could have formed an agency relationship by the circumstances surrounding the dispute and course of dealing between the parties. Specifically, Harbin has alleged sufficient facts in its Counterclaim that Lye represented himself to Harbin as having abilities and contacts that would allow him to raise significant investment capital on behalf of Harbin. At this same time, First Wilshire and AVM were conducting preliminary due diligence in connection with their eventual investment in Harbin, which provided circumstances that lead Harbin to believe that Lye had a hand in this investment. Lye's representations to Harbin, combined with First Wilshire and AVM's investment, led Harbin to believe that Lye was acting on Harbin's behalf in securing investment from First Wilshire and AVM. These alleged actions are also sufficient to establish a course of dealing between the parties, thereby demonstrating an agency relationship. The agency relationship gives rise to a fiduciary duty.

Having found that Harbin alleged sufficient facts to show that the fiduciary duty could have arisen prior to the Agreement, the Court also finds that Harbin's allegations that Lye did not fulfill his duty to raise investment capital on behalf on Harbin are sufficient to establish an alleged breach. Based on the foregoing analysis, the Court finds that Harbin has successfully plead a cause of action arising in tort for breach of fiduciary duty.

Should the Court's analysis end here, the economic loss doctrine would apply to bar Harbin's claim for relief. However, the Court finds that an exception to the economic loss doctrine applies to the instant action. This exception states that the economic loss doctrine does not apply where there is fraud that is independent of contractual duties, such as fraud in the inducement. *Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1082-

83 (D. Nev. 2004). Fraudulent inducement claims deserve special protection because fraud undermines one party's ability to negotiate on fair terms and make an informed decision. *Id.* at 1083.

Here, Harbin has presented sufficient facts that Lye's fraudulent misrepresentations to Harbin in the pre-contract period could have seriously undermined Harbin's ability to make an informed decision in deciding if it wanted to enter into the Agreement with Lye. Because the allegedly fraudulent misrepresentations occurred prior to signing the contract, the fraud occurred independent of Lye's subsequent contractual duties that arose after the parties signed the Agreement. As such, the fraud exception to the economic loss doctrine applies, preventing the doctrine from barring Harbin's claim for relief. Based on the aforementioned discussion, the Court denies Plaintiff's Motion to Dismiss Defendant's Counterclaim for Breach of Fiduciary Duty under Rule 12(b)(6).

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaim for Breach of Fiduciary Duty (#17) is DENIED.

Dated:   November 13, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**